## Case No. 1,566.

### BLOSSOM v. SMITH.

[31 Hunt, Mer. Mag. 203.]

District Court, S. D. New York. April 26, 1854.[1]

CARRIERS—BILL OF LADING—DELIVERY OF CARGO—CUSTOM AND USAGE.

[By law, resin is not permitted to be stored in New York City, and, by local usage, on arrival of a vessel, the consignee of the largest quantity of cargo may designate a public wharf in Brooklyn for delivery, in which designation the other consignees must acquiesce. The largest consignee designated a wharf, but the agent of the wharf owner forbade the landing. Thereupon the master of the vessel notified a consignee of the resin to lighter it from the vessel, which he refused, when the master landed the resin at another wharf, with instructions not to deliver the same unless the lighterage as well as freight was paid. Held, that the vessel failed to deliver the resin in the port of New York, as required by the bill of lading, and that her owners were liable for the value thereof.]

[In admiralty. Libel in personam by Benjamin Blossom and Charles J. Blossom against Jonas Smith and Paul Hulse to recover the value of 69 barrels of resin consigned to libelants. Decree for libelants.]

INGERSOLL, District Judge. In the month of May, 1853, sixty-nine barrels of resin were shipped on board the schooner R. W. Brown, owned by the respondents, at Wilmington, North Carolina, to be carried to the port of New York, and there delivered to the libelants, dangers of the sea only excepted, and the master issued the regular bills of lading therefor A law of the state of New York prohibits the storing of resin in the city of New York, and the custom of the port is to land resin at one of the public wharves in Brooklyn, and that the consignee of the largest quantity of such goods on board shall designate which wharf the vessel shall go to. The schooner arrived at this port, with the resin on board, May 26th, 1853, and, in accordance with the custom, the consignee of the largest quantity of naval stores on board named Mitchell's wharf as the one to which the vessel should go. Accordingly she proceeded thither, and landed all the goods on board except the sixty-nine barrels, which the agent of the owner

[1] [Reversed by the circuit court in Case No. 1,565.]

of the wharf forbade the carrier to land upon the wharf. Notice was therefore given to the libelants to lighter the goods from the vessel. They, however, neglected to do this, insisting that the goods should be landed at one of the public wharves in Brooklyn. On the 2d of June, the schooner, with the resin on board, hauled over to pier 28, East river, in the city of New York, and notice was again given to the libelants to come on board the vessel and take the goods there. They still refused; and on the 8th of June the carriers lightered the resin over to Lyon & Haff's yard, in Brooklyn, and stored it there, giving notice to Lyon & Haff not to let the libelants have it unless they paid the lighterage, in addition to the freight. The libelants, having tendered the freight and demanded the resin in vain, brought this suit upon the bills of lading for its non-delivery.

An attempt has been made by the respondents to prove, that when the owner of the wharf selected by the consignee of the largest quantity of goods on board the vessel refuses to permit the goods of a particular consignee to be landed at such wharf, it is by custom made the duty of such particular consignee to send lighters for the goods, and have them lightered from the vessel to another public wharf. But the attempt to establish this latter custom by sufficient proof has failed. In the few cases which have occurred of such refusal, sometimes the consignee has lightered the goods, and sometimes the carrier has lightered them, and sometimes the ship has hauled to another wharf. The general custom is as above stated.

The sole question in this case is, whether the carrier has delivered the resin to the libelants according to the bill of lading; or, if he has not, whether he has shown any good, valid, legal excuse for not so doing. The resin has never come into the actual possession of the libelants. It has been landed on one of the wharves of Brooklyn, where, by custom, the carrier had a right to land it, provided he gave the libelants sole and exclusive control over it, upon their paying freight. This control the respondents refuse, unless the libelants will pay the lighterage, in addition to the freight. If they have the right to demand this, the libelants cannot recover in this suit; and they have no right to demand this, unless the libelants were in the wrong in neglecting to receive the goods according to the notices. The respondent says, that the libelants were in the wrong in two instances. First, in not sending their lighters for the goods when the schooner was at Mitchell's wharf; second, in not receiving the goods on the vessel's deck when she was lying at pier 28.

1st. There is no law or custom which compelled the libelants to lighter the goods from the vessel at Mitchell's wharf. The carrier's contract was to deliver the goods at the port of New York, and on such a contract the

custom is to deliver them on one of the public wharves at Brooklyn. There is no custom to deliver at the ship's sides in a lighter. Such is not the usual way of delivery, and an offer to deliver it will not satisfy the contract; and if the owner of the wharf wrongfully prevents the discharge of the goods, the carrier is not excused from fulfilling his contract, which is to land at some wharf. The libelants were not in the wrong, therefore, in neglecting to send lighters for the goods while the schooner was lying at Mitchell's wharf. That was no part of the contract, and there is no custom which makes it such, or imposes any such duty on the consignee.

2d. The libelants were not in the wrong in not receiving the goods on the deck of the vessel at pier 28. By the law of the state, and if that law was not in existence, yet by the custom of the port, the city of New York is established to be not a usual and proper place for the delivery of the resin. And no tender is in conformity with the contract to deliver, unless the place where it is tendered is a usual and proper place for its delivery.

The decree of the court, therefore, is, that the libelants recover of the respondents the value of the resin in controversy at the time when it was demanded, less the freight.

Ordered reference to a commissioner to ascertain that amount.